C. HENNECKE COMPANY, Appellant, vs. COLUMBIA LODGE, No. 11, KNIGHTS OF PYTHIAS and others, Respondents.

*September 12—December 5, 1939.*

For the appellant there were briefs by *Dougherty, Arnold & Kivett* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondents there were briefs by *Julius O. Roehl,* attorney for Robert H. Ueberall, Fred W. Hoppe, and Frank Dite, individually and as trustee, and *Lois J. Roehl* of counsel, and *Harry G. Slater,* guardian *ad litem,* all of Milwaukee, and oral argument by *Mr. Roehl* and *Mr. Slater.*

The following opinion was filed October 10, 1939:

MARTIN, J.  The material facts are not in dispute.  The action was brought to quiet title to the real estate described

in the complaint owned by the defendant Columbia Lodge, No. 11, Knights of Pythias, located in the city of Milwaukee, on which premises the defendant Lodge executed a first mortgage or trust indenture on September 5, 1923, in the amount of $90,000, for the purpose of paying the purchase price of the real estate in question and for the erection of a lodge hall and building thereon. In November, 1921, Columbia Lodge, No. 11, Knights of Pythias, by duly adopted resolution authorized the purchase of the real estate in question for the sum of $10,000. Soon thereafter, members of the Lodge commenced soliciting subscriptions for the purpose of paying the purchase price of the lot. By March 7, 1922, more than $10,000 had been subscribed and the moneys paid into the Lodge. On said date the deed to the property and abstract of title were delivered to the Lodge. In the solicitation of funds among Lodge members, cards were used reciting that the signer subscribed to the building fund in the amount indicated on the card. During the campaign for funds it appears, and the trial court so found, that the solicitors made certain representations to these subscribers—that they were to receive first-mortgage bonds for the amounts of their subscriptions. There is no evidence that the Lodge at any time during the solicitation of funds authorized or approved of said representations by the solicitors to respective contributors.

On July 24, 1923, a resolution was adopted by the Lodge authorizing the trustees of the Lodge to execute bonds in the amount of $90,000 to be secured by a first mortgage or trust indenture covering the real estate in question. The trust indenture of September 5, 1923, above mentioned, was executed by the trustees of the defendant Lodge and delivered to the defendants Robert Ueberall, Fred Hoppe, and Frank Dite, who were first-mortgage trustees. The trust indenture provided that the bonds to be executed thereunder were to be

delivered to the first-mortgage trustees for certification and that the trustees were to certify and deliver the bonds so certified *only upon the order of the board of trustees of the defendant Columbia Lodge.* Within a short time thereafter, the exact date not appearing, the trustees of the Lodge executed bonds in the amount of $46,500, and delivered same to the trustees named in the trust indenture. On November 27, 1923, Columbia Lodge purchased $8,750 of these first-mortgage bonds which bonds were certified by the first-mortgage trustees and delivered to the Lodge. It is conceded that no other first-mortgage bonds were certified by the trustees under the first mortgage or trust indenture until sometime subsequent to January 20, 1934.

On September 22, 1923, appellant entered into a contract with the defendant Lodge for the furnishing of the cast-steel and iron work necessary in the construction of the Lodge hall, for an agreed sum of $11,020. On November 30, 1923, the Lodge defaulted in its contract with appellant company. Thereafter, on December 2, 1927, appellant company commenced an action against the Lodge for breach of contract, and on April 25, 1933, it recovered a judgment against the Lodge in the sum of $9,298.65. This judgment was duly docketed and execution issued thereon. Thereafter on June 12, 1934, the real estate in question was sold to appellant company on execution sale. It appears that during the period between January 8, 1924, and September 9, 1924, the Lodge constructed a basement for its proposed Lodge building, but due to lack of finances, it was unable to proceed further with its proposed building. It further appears that during the period between January 8, 1924, and June 6, 1925, the interim certificates, to which reference will be made hereinafter, were issued to the members of the Lodge who had subscribed either to the purchase of the lot or the construction of the building.

On March 16, 1926, the Lodge building committee submitted the following report, which report was on said date accepted and approved by the Lodge:

"Your building committee, after having recommended the completing of the basement of our building several months ago, have been trying since that time to find ways and means for financing the project. We have been in touch with several members of the old finance committee and also your trustees, and our plan of financing has not yet met with favor in either case. We have therefore come to the conclusion that this Lodge cannot go ahead with the plans as outlined at that time, and we feel that the majority of the members do not care to get behind this proposition and push it to completion.

"We therefore recommend that the property on Sherman boulevard and North avenue [the lot in question] be turned over to the trustees of Columbia Lodge and be placed on sale."

It appears that sometime prior to January 12, 1934, the exact date not appearing, appellant company instituted supplementary proceedings against defendant Lodge under its judgment of April 25, 1933. That in said supplementary proceedings a receiver was appointed and defendant Lodge was enjoined from disposing of any of its property. The receiver thereafter took possession of the bonds in the amount of $8,750, which the Lodge had purchased on November 27, 1933, which were issued under the $90,000 first-mortgage trust indenture to which reference has been made. Thereafter the receiver sold said bonds to appellant company for the sum of $100. The sale thereof being confirmed on January 31, 1936.

It appears that while the supplementary proceedings were pending, and on January 12, 1934, defendant Lodge adopted the following resolution proposed by the trustees for the bondholders. The resolution reads:

"Whereas, heretofore there have been issued certain certificates to the members of the Lodge, known as interim certificates, and

"Whereas, the said certificates were to be surrendered to the trustees for bondholders in exchange for bonds secured by the trust agreement heretofore executed and recorded, and

"Whereas, the said certificates were to be surrendered at a time when the building was completed and on a paying basis, and

"Whereas, the building having not been completed, it appears to be for the best interests of the certificate holders, and of Columbia Lodge that the said certificates be exchanged for bonds secured by the said trust agreement mentioned, and

"Whereas, the trustees for bondholders are in possession of bonds ready to be issued in exchange for the said interim certificates. Now, therefore,

"Be It Resolved, that the trustees for bondholders be, and they are hereby authorized, empowered and directed to deliver bonds to the holders of said interim certificates upon surrender of the same of the said holders to the trustees for bondholders."

On January 20, 1934, the trustees for bondholders notified the interim-certificate holders that they might exchange their interim certificates for bonds. The notice concludes: "It will be absolutely necessary that interim certificates be presented by the lawful owners and holders thereof, and surrendered before bonds will be issued." The total amount of interim certificates outstanding as of that date amounted to $16,400. It should be noted that with the exception of $8,750 of bonds which the Lodge purchased on November 27, 1923, no bonds under the $90,000 first-mortgage trust indenture were issued to any interim-certificate holder until subsequent to January 20, 1934. While bonds in the principal amount of $46,500 had been in form executed by the trustees of the Lodge, they were not in fact certified or executed by the trustees for the bondholders with the exception of the bonds purchased by the Lodge. The balance of the $46,500 of bonds were deposited and retained in a lockbox until subsequent to January 20, 1934. In the findings of the trial court, the form of the interim certificate is set out and here set out in full:

Number ——.                                    Amount ——.

MORTGAGE BUILDING LOAN OF
COLUMBIA LODGE NO. 11
KNIGHTS OF PYTHIAS

INTERIM CERTIFICATE

This is to certify, that the undersigned have received payment for mortgage bond in the principal sum of —— dollars ($——) to be issued by Columbia Lodge No. 11, Knights of Pythias, for the erection of its new Castle Hall on the southeast corner of North avenue and Sherman boulevard, Milwaukee, Wisconsin. Said bond shall be one of a series secured by mortgage upon said real estate and improvements thereon, subject to one prior mortgage in an amount to be designated by the Lodge. This certificate may be exchanged for bonds when the same shall be issued by the Lodge. Interest shall be paid upon bonds only and not upon interim certificates.

In witness whereof, Columbia Lodge No. 11, Knights of Pythias, of Milwaukee, Wisconsin, by its board of trustees has caused the name of said Lodge to be hereunto subscribed and its corporate seal to be affixed this —— day of ——, 1924.

Columbia Lodge No. 11, Knights of Pythias.

(Seal)
(Signed) ANDREW JOHNSON,
(Signed) HERMAN TOEPFER,
(Signed) CHAS. POETHKE,
Board of Trustees.

The trial court in its conclusions of law held that the $90,000 first-mortgage trust indenture constituted a valid and existing lien upon the property in question to the extent of all bonds certified and delivered by the trustees to the holders of interim certificates to the extent of the principal sum actually paid by such holders. This conclusion completely ignores the equities and the lien rights of appellant company under its judgment of April 25, 1933. It was not until January 12, 1934, that the defendant Lodge, with full knowledge of the lien of the appellant's judgment and while supplementary proceedings instituted under said judgment

were pending, attempted by resolution to authorize the exchange of the interim certificates for mortgage bonds under the lien of the first mortgage, and notwithstanding the fact that the interim certificates specifically provided that the holders thereof were to receive mortgage bonds secured by a mortgage which was to be subject "to one prior mortgage in an amount to be designated by the Lodge."

Sec. 270.79 (1), Stats. 1931, in effect on April 25, 1933, when appellant company recovered its judgment against defendant Lodge for breach of contract, so far as material, provides:

"(1) Every such judgment, when so docketed, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property in the county where the same is docketed."

We think it clear that the interim certificates, as issued, created no lien against the Lodge property in question. The only bonds issued prior to appellant's judgment, under the first-trust mortgage, were the $8,750 of bonds purchased by the Lodge in November, 1923. The trial court held, and we think correctly so, that "the purchase of, and full payment for, bonds secured by said trust indenture in the principal sum of $8,750 by the defendant Lodge when it still owned the real estate in suit, created a merger of the legal and equitable title to the amount and extent of said bonds." The trustees for bondholders, under the terms of the trust indenture, could issue bonds *only upon the order of the board of trustees of defendant Lodge.* Only bonds as and when properly issued created an indebtedness to be secured by the first-trust mortgage.

The trial court found that the money for the purchase of said real estate was obtained by solicitation among the members of the Lodge; "and upon the representation and promise that each subscriber or contributor would receive a first-mortgage bond upon said premises when acquired, together with

any improvements thereon, and that said representation and promise was an inducement to such subscribers or contributors upon which they relied." The finding then sets out the form of the subscription then in use. It reads:

"I hereby subscribe to the Columbia Lodge No. 11 K. of P. Building Fund the sum of —— Dollars.

"Signed —— ——."

The court further found that:

"After the execution of the trust indenture above referred to, the defendant Lodge further solicited its members for subscriptions to a building fund to erect and construct the Lodge building above referred to, and obtained further subscriptions from such members upon the representation and promise that such subscribers were to receive first-mortgage bonds upon said premises with the projected improvements *when completed,* upon which representation and promise said subscribers relied."

Under this latter finding the subscribers were not to receive first-mortgage bonds until the building was completed. It is conceded that the only part of the building constructed was the basement. The oral representations referred to above all preceded the date of issuing any of the interim certificates. It is apparent from the findings that from the time the defendant Lodge first considered the matter of purchasing a site and the erection of a building, until the execution of the first-mortgage trust indenture on September 5, 1923, different plans for financing the project were discussed and considered by members of the Lodge. It is also clear that after the first-mortgage bond issue, financial difficulties were encountered which necessitated some different plan of financing. The interim certificates on their face show that the holders thereof were not to receive bonds secured by the $90,000 first-mortgage trust indenture. Whatever representations may have been made to them theretofore, when they received their interim certificates, they knew that the bonds they were to receive were to be secured by a junior mortgage. The interim

certificates are not ambiguous. None of the holders made any claim at the trial that he did not understand the terms and conditions of his certificate. We think it elementary that the written agreement is controlling over any oral representations as to the security back of the bond each certificate holder was to receive. It is obvious that when appellant company instituted supplementary proceedings on its judgment of April 25, 1933, and pending the appointment of a receiver of the Lodge property, the Lodge determined to try to protect the interim-certificate holders through an exchange of their certificates for a like amount of bonds secured by the first-mortgage trust indenture. Such exchange actually took place after the Lodge was enjoined from disposing of any of its property. Respondents argue that this did not constitute a violation of the injunctional order because it was only performing a contractual duty. Under the express terms of the interim certificate, the holder was not entitled to bonds secured by a first mortgage. So far as the record discloses, the injunction has not been dissolved. We think it clear that issuing first-mortgage bonds and exchanging them for the interim certificates in question was a violation of the injunctional order.

Respondents further contend that appellant company purchased the property subject to outstanding taxes and all other incumbrances of record and is therefore estopped from attacking the lien created by the first-mortgage trust indenture which was on record at the time the execution sale took place. This argument overlooks the fact that as of the date of appellant's judgment, April 25, 1933, there were no outstanding bonds secured by the first-mortgage trust indenture. The only bonds which had theretofore been issued to any purchaser were the bonds in the amount of $8,750 which the Lodge had purchased on November 27, 1923. As to these bonds the trial court held that the purchase of same by the Lodge created a merger of the legal and equitable title and thereby effected a discharge and extinction of the bonds in

said amount. Of course appellant's lien, under its judgment, attached against the Lodge real estate as of the date said judgment was docketed. The property was sold on execution sale to appellant company in satisfaction of its judgment. All subsequent liens or incumbrances, except taxes, were cut off by the sheriff's sale on execution. Some additional questions were raised in the briefs of counsel, but in view of our conclusions as indicated, there is no occasion to prolong this opinion in a discussion of additional propositions which would not change the result.

*By the Court.*—Judgment reversed. Record remanded with directions to enter judgment in favor of plaintiff and against the defendants in accord with the prayer of plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on December 5, 1939.